## Herron et al. v. McMurray et al.
## Dennis et al. v. Same.

October 22, 1946.

Rehearing denied November 26, 1946.

Harris & Drury and Jos. W. Cambron for appellants.

Withers & Lisman for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Two suits involving the validity of a local option election, consolidated below, are heard together on appeal by contestants below. One set of contestants were voters in Magisterial District No. 5, the other in No. 4, of Union County. The pleadings, proceedings, orders and judgments are identical. The appeal is from a judgment sustaining demurrers to seventeen of the eighteen paragraphs of each petition and, upon failure of contestants to plead further, dismissing the petitions.

The election was petitioned for, called and held in Magisterial Districts Nos. 3, 4 and 5. No. 5 embraced the town of Sturgis, the one place in which liquor was sold legally. The combined districts gave a dry majority of 151 as per returns, though No. 3 returned a majority of 77 against prohibition.

The election, held on June 3, 1946, followed an order of May 6. Contests were filed June 27; summons served June 28. The election commissioners, named defendants, did not plead. Four or five voters in two districts were allowed to intervene. KRS 242.120. They filed general demurrers on July 6, and other motions on July 12, and on July 16, not waiving, answered, merely denying generally each paragraph of the petition. On this day, and within thirty days of the return of summons service, the chancellor sustained demurrers to six paragraphs, making various rulings in relation to other paragraphs.

Paragraph 7 alleged that the election was void because the order included in the call three districts, when there should have been separate orders based upon separate petitions; that is, petitions signed by the requisite number of voters of each district. We are not so much

concerned with the contention that there should have been three separate orders, but the better practice, and to avoid the question, would be the entry of separate orders. KRS 242.020.

The failure to file separate petitions by the voters of the "territories" to be affected is the fatal defect, as we construe and have construed the law. While the document is not in the record, it is clear that only one petition was filed. The order recited that there "has been filed with the county clerk a petition signed by Amanda and H. B. Self and others requesting an election be called" in the three districts, and further recited that "the number of signees to said petition, totaling a sufficient number of legal voters in the third, fourth and fifth districts is equal to 25 per cent or more of the votes cast in said districts at the last preceding general election." It is not contended by appellees that petitions were filed, signed by 25 per cent of the qualified voters of each of the districts. KRS 242.020.

As we read and construe the law (Ch. 242, KRS) relating to local option elections it becomes manifest that it was not the thought of the Legislature that the voters of one district, city, or precinct could petition for an election in another city, district, or precinct, the idea being the voters of the "territory affected," that is, the recognized territorial subdivisions, have the right to exercise local self-government (in respect to the traffic in alcoholic beverages) and for that purpose designated district territorial units, viz.: County, city, district and precinct.

The county is the controlling unit; the statute makes it so, and we have so frequently held to that construction that multiple citations would be useless. In the recent case of Bennett v. Day, 271 Ky. 676, 113 S. W. 2d 38, 41, we made that clear, and equally as clear that an election held in the county and in a precinct were not elections "in the same territory." A cursory reading of the statute (KRS 242.010) will demonstrate that the Legislature meant by "territory" or territory to be affected, first a county, second a city, third a district and fourth a precinct. It required the petition to be signed by the voters in "the territory to be affected, equal to twenty-five per cent of the votes cast in the territory." It provides that no local option election shall be held on the

same day as other elections (primary and general) in the territory or any part of the territory, and "no election in any territory less than the county shall be held on the same day on which an election for the entire county is held." When an election is ordered for a "city, district, or precinct" the notices are to be posted in each precinct. KRS 242.020 et seq. Under KRS 242.-050 the question to be submitted is not to be the same in different territories. If prohibition is not in force in the "territory" the question is, "Are you in favor of adopting prohibition?" If in force, it is whether or not the voters favor continuation.

It is clear that it was never intended that the required percentage of voters of one city, district, or precinct could by their petition or petitions control the initial will of the voters in another city, district, or precinct by requesting an election which would affect territory other than that of the particular precinct, city, or district wherein the petitioner was a qualified voter. The county may bind any and all subdivisions, even in the initial step, but we have never held that any one or more of its territorial subdivisions may bind other subdivisions in that important step.

To follow the plan adopted here would or might result in many unpleasant, undesirable or anomalous situations. The voters in one or more wet precincts might by a joint petition foist the sale of liquor on a dry precinct or district. Voters in two or more dry precincts or districts might join in a petition asking for an election in a wet precinct or district, without regard to the wishes of the qualified voters in that territory. The anomaly is obvious here. As we read briefs, at the time of the election the district in which the town of Sturgis was located, or the town, was the only territory in which liquor was legally sold. The result of the election showed that district No. 5 in which Sturgis was located went dry. However, No. 3, with a much smaller vote, went wet. The result, if the combined districts are to be treated as a unit, was to make all three districts dry. If separate petitions had been filed, and separate orders made, the result would have been to transfer the sale of liquor from Sturgis to an adjoining district. This situation we may conceive actuated the propounders in the attack

on the result as a whole, that is the combination of districts, rather than by counterclaim attacking the result in district No. 3.

Our opinions clearly show the intent of the Legislature to allow local units to govern, a county in all cases being the dominant unit. In Skaggs v. Fyffe, 266 Ky. 337, 98 S. W. 2d 884, 885, we said:

"It is made the duty of the county judge to order such an election upon the filing of an application therefor in the county court signed by a number of legal voters in any of the specified units equal to 25 per cent. of the votes cast therein."

In Ray v. Spiers, 281 Ky. 549, 136 S. W. 2d 750, we approved Early v. Rains, 121 Ky. 439, 89 S. W. 289, holding that the law applied to area or territory rather than to citizenship or electors. In the Early case, in going into the basic constitutional feature, we held void (on other grounds) a local option election held in a town. We made reference to pertinent constitutional provisions, and to Sec. 2554, KS:

"By that section, upon a petition signed by a number of legal voters equal to 25 per cent. of the votes cast in the territory proposed to be affected at the last preceding general election, it is made the duty of the county court to order an election within the territory specified in the petition. The citizens who are legal voters in the territory alone can take the initiative in the matter, and they determine the extent of territory or unit to be affected by the proposition; that is, whether it shall be a whole county, a whole city or town, or merely one or more precincts of the county or city. This follows the requirement of the Constitution, which gives the right to a city or town as a whole to allow or prohibit the liquor traffic within its limits. In view of the language of sec. 61 of the Constitution, it is not permitted to the Legislature to deny a town or city the right to vote on this subject as a whole."

The legislative body could not legally provide that voters of any subdivision of the county, or city, require an election in any subdivision of the county, or city, other than its territorial own; this is made clear in the Early-Rains case:

"Where a town or city is the unit, for the purposes of local self-government, and particularly upon the subject of licensing or prohibiting the liquor traffic, it is supreme and entire within its jurisdiction. * * * For it is not the county, but the town, that is deemed the government in such matters."

Having in mind that the Constitution and the present law makes the county, city, district, or precinct the to be affected territory, we may note the construction we gave them in Young v. Trimble, 164 Ky. 177, 175 S. W. 366, 367, wherein we said that under the Constitution (sec. 61) "the city, town, district, and precinct is each an independent unit, with the right to control and regulate for itself the liquor traffic within its territory, free from the dominion of any larger unit in the territory of which the smaller unit was a part. * * * 'The local feature of the statute is kept prominent in every part of it. Each subdivision in emphatic terms is given a right to determine for itself its local wants, and, if it may not do so independently of other local preferences, it is denied a right expressly given by the language of the law.' * * * The General Assembly has left to the decision of each local community under which of the two policies it shall live—the license system or prohibition— * * *. 'There is no other way to uphold the law in its entirety than to treat the territory of the smaller subdivision as exempted from the domination of the larger if it chooses to act independently.' "

It seems clear to us, from a reading of the foregoing, that the election was not called in conformity to the statutes, hence it was void, and the judgments are reversed, with directions to enter an order holding them so.